# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-0573 |
| | § | |
| PATRICK MEDLOCK, *et al*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *in forma pauperis* and as a John Doe litigant, filed this civil rights complaint alleging violations of his civil rights by Texas Department of Criminal Justice ("TDCJ") officers and officials Brad Livingston, Patrick Medlock, Robert McVea, Thomas O'Reilly, and Michael Cunningham. Plaintiff was represented by counsel at the time the lawsuit was filed, but is currently proceeding *pro se*.

Pending before the Court are the motions for summary judgment filed by defendants Medlock (Docket Entries No. 59, 60), Livingston (Docket Entries No. 64, 65), and McVea (Docket Entries No. 76, 65).[1] Defendants O'Reilley and Cunningham do not seek summary judgment at this time. Plaintiff filed two letters with the Court, which the Court has, in the

---

[1] McVea expressly incorporated and adopted all of defendant Medlock's summary judgment exhibits. (Docket Entry No. 76, p. 1.)

interest of justice, construed as responses to the motions for summary judgment. (Docket Entries No. 68, 69.)[2]

Having carefully considered the motions, the responses, the probative summary judgment evidence, the record, and the applicable law, the Court GRANTS defendant Livingston's motion for summary judgment, GRANTS IN PART and DENIES IN PART the motions for summary judgment filed by defendants Medlock and McVea, and ORDERS as follows.

## *Background and Claims*

Plaintiff alleges in his complaint that, on July 16, 2007, he arrived at the TDCJ Huntsville Unit with approximately four days left to serve on his sentence. He was placed in a segregation cell that only a sergeant could open. (Docket Entry No. 1, p. 3.) Later that night, at approximately 10:15, defendant officer McVea walked past plaintiff's cell and saw that he had three blankets, one more than allowed by prison regulations. McVea yelled at him to "show proper respect," and returned a few minutes later with two other officers, defendants Medlock and Cunningham. *Id.*, p. 4. The officers told him to remove his pants, which he refused to do. Medlock opened the cell door and the three officers entered the cell.

Plaintiff states that the three officers held him down, removed his pants, and began kicking him and shoving his head into the floor. Medlock used Hispanic epithets against him during the assault. Plaintiff's allegations of the ensuing events are inconsistent. In his

---

[2]Although no response was filed following the filing of defendant McVea's motion, the Court will apply plaintiff's two responses to McVea's motion.

2

complaint, plaintiff states that, while McVea continued holding plaintiff down, Medlock and Cunningham removed their own pants and ordered plaintiff to open his mouth. He refused, but Cunningham and Medlock kicked him until he complied. *Id*. Plaintiff states that Cunningham and Medlock penetrated his mouth with their sex organs, then penetrated him anally. Plaintiff states that he passed out at that point, and regained consciousness the next day, at which point he was medically examined and released from prison. (Docket Entry No. 1, p. 5.)

The Office of the Inspector General ("OIG") undertook an investigation of the alleged sexual assault. Plaintiff initially told the OIG investigator there had been oral penetration, but he made no mention of anal penetration. (Docket Entry No. 60, p. 5.) In his response to the motion for summary judgment, and contrary to his complaint, plaintiff specifically denied there had been anal penetration. (Docket Entry No. 69.) When he was examined by prison medical staff the morning after the assault, he reported oral penetration and an attempted, but unsuccessful, anal penetration. (Docket Entry No. 60, p. 8.)

Plaintiff's accountings of the alleged oral penetration are likewise inconsistent. In his complaint, he states only that defendants Medlock and Cunningham penetrated him orally with their sex organs. (Docket Entry No. 1, p. 4.) In his report to the OIG investigator, plaintiff stated there had been no oral penetration because he refused to open his mouth, and that the officers ejaculated on the outside of his mouth and face. (Docket Entry No. 60, p. 8.) In his response to the motion for summary judgment, plaintiff avers that Medlock penetrated him orally and ejaculated in his mouth. (Docket Entry No. 69.)

3

Plaintiff was examined by prison medical staff early the next morning following the alleged incident. According to the OIG report,

> During a medical examination conducted at approximately 11:00 a.m., [plaintiff] stated to Mr. Lloyd Aschberger, PA, that along with oral sex, unsuccessful anal penetration was attempted (not previously reported.) The medical examination produced no evidence of sexual assault; there was no oral, rectal, or genital, injury or anomalies. Additionally, no injury was visualized or noted to [plaintiff's] facial area; however, a small bruise was noted on the left rearward side of the scalp. Mr. Aschberger noted several areas of very superficial redness, similar to one created by scratching an itch, on [plaintiff's] torso. Mr. Aschberger also noted that [plaintiff] displayed no distress or mental anguish during the examination.

(Docket Entry No. 60, p. 8.) Aschberger noted the following observations during his examination of plaintiff:

> no distress or mental anguish displayed – no oral lesions – slight deviation of nasal bridge to right but nose essentially nontender – ecchymosis over left lateral occipital scalp noted – ear canal are clear – no mastoid lesions – neck remains supple – normal chest symmetry – soft [abdomen] – no rectal or genital lesions – several areas of suggested minor bruising over torso (very minor). Musculoskeletal discomfort secondary to assault[,] unable to substantiate sexual act, bruises.

(Docket Entry No. 60, p. 23.) Aschberger prescribed Motrin for plaintiff.

Buccal swabs from plaintiff, Medlock, Cunningham, and McVea were submitted for forensic laboratory testing, along with the shirt, boxers and pants that plaintiff wore the night of the alleged assault. The results of the forensic testing are summarized in the OIG report as follows:

4

> No semen was detected on the shirt, pants, or boxers, and DNA extracted from two stains discovered on the underwear was consistent with [plaintiff's] DNA. No officer DNA was discovered in any of the evidence analyzed.

*Id.*, p. 11.

Defendant Medlock submitted a written statement to the OIG investigator, which was summarized in the OIG report as follows:

> Sergeant Medlock denied that he struck or witnessed any officer strike [plaintiff] on the body, face, and head, as alleged. Sergeant Medlock further denied that he forced his penis into the offender's mouth and ejaculated. Sergeant Medlock denied the allegation that he witnessed any officer place their penises around the offender's mouth and denied that he attempted to insert his penis into [plaintiff's] anal/rectal area. Sergeant Medlock stated that he received a radio transmission that his assistance was needed on L-Line (Ad. Seg.). Sergeant Medlock said that when he arrived at L-Line, he was advised that an offender had a sheet over his light fixture and refused to remove it. Seregeant Medlock said that he approached the cell and a black male offender removed the sheet from the cell, but told Medlock that he would put the sheet on the fixture once Medlock left. Sergeant Medlock said that the offender submitted to handcuffs and was escorted from his cell to the shower cell. Sergeant Medlock said that he ordered the officers to enter the cell and remove everything from the cell except the mattress. Sergeant Medlock said that as [they] walked past a Hispanic offender's cell (the next cell from the black male offender's cell), he saw that the offender had a torn sheet covering his light fixture. Sergeant Medlock said that he ordered the offender to give the sheet to him and the offender complied. Sergeant Medlock said that he saw an old porn magazine on the bottom bunk and instructed the offender to give the magazine to him. Sergeant Medlock said that the offender complied and Medlock left with the items. Sergeant Medlock said that he threw the sheet and magazine away. Sergeant Medlock could not explain the offender's injuries and said that he did not see any injuries at the time he talked to him. Sergeant Medlock again denied that he struck the offender.

(Docket Entry No. 60, pp. 17–18.)

Officer McVea also submitted a written statement to the OIG investigator, which is summarized in the OIG report as follows:

5

> Officer McVea said that he ordered Offender Caldwell to remove a sheet from the light fixture and the offender remained in bed. Officer McVea said that he banged on the cell bars with the food slot tool and Offender Caldwell got out of bed. Officer McVea said that Caldwell refused to remove the sheet and 'shook his penis' at McVea. Officer McVea said that he called the supervisor's office and requested assistance. Officer McVea said that a few minutes later, Sergeant Medlock and several officers arrived. Officer McVea said that Sergeant Medlock spoke with Offender Caldwell and ordered Caldwell to submit to hand restraints. Officer McVea said that Caldwell complied and was escorted to [a] shower cell. Officer McVea said that he spoke with Offender Caldwell about his behavior while Sergeant Medlock and the other officers remained at the cell. Officer McVea said that when the officers left, he packed Offender Caldwell's property and inventoried it. Officer McVea said that L-2-15 was never opened. Officer McVea denied that he struck the offender or witnessed any officer do so. Officer McVea said that he did not rub his penis across the offender's mouth and he did not witness Sergeant Medlock insert his penis into [plaintiff's] mouth. Officer McVea further denied that he or any other officer attempted to insert their penises into [plaintiff's] buttocks.

*Id.*, p. 21. Officer Cunningham also provided a statement, which is summarized in the OIG report as follows:

> Officer Cunningham said that he worked L-Line 1-Row and Officer McVea worked L-Line 2-Row. Officer Cunningham said that Officer McVea walked downstairs to 1-Row to call for assistance because Offender Caldwell 'shook his penis' at McVea. Officer Cunningham said that Sergeant Medlock arrived along with Officers King and Foley. Officer Cunningham said that he remained on 1-Row. Officer Cunningham said that he witnessed the officers approach Offender Caldwell's cell and witnessed the officers escort Caldwell to the shower cell. Officer Cunningham also witnessed Sergeant Medlock talk to the offender assigned to the next cell. Officer Cunningham said that he did not witness anyone enter Caldwell's or the next cell at any time. Officer Cunningham said that a few minutes later Sergeant Medlock left the building. Officer Cunningham said that he did not see Sergeant Medlock force his penis into the offender's mouth and Cunningham did not rub his penis around the offender's mouth.

*Id.*, pp. 18–19.

6

The OIG investigator also obtained a voluntary statement from Reagan Caldwell, a prisoner who had been in a cell adjacent to plaintiff's cell the night of the alleged incident. The OIG report summarizes Caldwell's statement as follows:

> Offender Caldwell said that on July 19, 2007, he was housed in L-2-16 and [plaintiff] was housed in L-2-15 at the Huntsville Unit. Offender Caldwell said that he and [plaintiff] placed a 'jumper' on the light fixture so that they could sleep. Offender Caldwell said that a Black male officer (he believed to be Nigerian) weighing approximately 265 pounds, wearing a thrust vest with the name 'Ibarra' on it approached Caldwell's cell.[3] Offender Caldwell said that Officer 'Ibarra' ordered him to remove the 'jumper' from the light fixture and Caldwell refused. Offender Caldwell admitted that he shook his penis at the officer and the officer left. Offender Caldwell said that Sergeant Medlock, Officer Cunningham, and Officer 'Ibarra' approached [plaintiff's] cell a few minutes later, ordering [plaintiff] to remove the 'jumper' from the light fixture. Offender Caldwell said he removed his 'jumper' from the light fixture and the officers entered [plaintiff's] cell because he would not remove the light fixture [sic] from his cell. Offender Caldwell [stated] that he extended a small mirror from his cell and, utilizing the mirror, looked inside [plaintiff's] cell. Offender Caldwell claimed that he witnessed the three officers strike [plaintiff] several times on the face, head, and chest. Offender Caldwell claimed that he saw Sergeant Medlock and Officer Ibarra expose their penis [sic]. Offender Caldwell said that Officer Cunningham was inside the cell, but he did not expose his penis. Offender Caldwell said that Sergeant Medlock was at [plaintiff's] feet and 'Ibarra' was at [plaintiff's] head. Offender Caldwell alleged Sergeant Medlock had his penis towards [plaintiff's] buttocks and 'Ibarra' had his penis at [plaintiff's] mouth. Offender Caldwell stated that he could not be sure that either officer penetrated [plaintiff's] buttocks/mouth. Offender Caldwell stated that he yelled at the officers to stop and they exited the cell. Offender Caldwell said that he submitted to handcuffs and the cell door was opened. Offender Caldwell said that Sergeant Medlock, Officer Cunningham, and Officer 'Ibarra' entered Caldwell's cell. Offender Caldwell claimed that the officers struck him several times on the head and face. Offender Caldwell said that the officers escorted him to the shower cell. Offender Caldwell said that he remained in the shower cell for approximately 4 1/2 hours. Offender Caldwell said that when he returned to his cell, he found

---

[3]Plaintiff contends that defendant McVea was wearing Officer Ibarra's vest.

7

>that the officers had removed everything from his cell, including his mattress. Offender Caldwell said that [plaintiff] was on his bunk during the entire time the officers were in the cell. Offender Caldwell said that he never saw [plaintiff] on the floor of his cell.

(Docket Entry No. 60, pp. 19–20.)   A second offender, who had been housed in L-1-14, informed the OIG investigator that he had heard two cell doors opened on 2-Row. After one door opened, he heard nothing. After the second door was opened, he heard footsteps as if someone had entered the cell. He heard "shuffling of feet" then officers telling the offender to "shut up." He believed the officers had "roughed up" the offender because he heard him moaning as if in pain. (Docket Entry No. 60, p. 20.)

Plaintiff's two responses to the motions for summary judgment state, in their entirety, as follows:

>I need justice for what these officers did to me I want to take them to court for what they did to me my mind is not functioning like it used to I'm having a lot of mental problems sometimes I feel like my heart is going to stop beating due to what they did to me I got evidence leading to the fact that these people seirously [sic] injured me. I could die at any moment from what they did to me please I want justice I need trial.

(Docket Entry No. 68, original punctuation.)

>On the day and date at 10:15 a.m. 7-19-2007 I was asleep when three officers one sergeant and two officers opened the door and got in. When they got in they threw me to the ground and started beating me on my head and the rest of my body then they pulled off my pants and my underwear and started to rape me they pulled out their penis and wanted to put it in my rectum then the sergeant put it in my mouth then he moved the cheeks on my mouth and he ejaculated in my mouth he threw allot of semen the other officers wanted to insert their penis but I would move around so they wouldn't penetrate me all

>hey did was rub on my buttocks but they were not able to penetrate me because I kept moving around they only penetrated me in my mouth but I spit it all out and I have a witness that saw what happened I need one trial and justice.

(Docket Entry No. 69.)

Plaintiff states that as a result of the assault, he sustained serious and permanent injuries, including loss of vision in one eye and reduced vision in the other eye, and continues to experience seizures, pain, and disfigurement of an undisclosed nature. Plaintiff claims that the defendants assaulted him because he is Hispanic. *Id.*, p. 7. He sues McVea, Cunningham, O'Reilly, and Medlock in their individual capacities, and Livingston in his official capacity, for monetary damages and declaratory relief. He asserts Eighth and Fourteenth Amendment claims against Medlock and Cunningham in their individual capacities for sexual assault; against McVea in his individual capacity for participating in, and failing to protect him from, the sexual assault; Fourteenth Amendment claims against Medlock, McVea, and Cunningham in their individual capacities for racial discrimination; Eighth Amendment claims against Medlock, McVea, and Cunningham in their individual capacities for use of excessive force and verbal abuse; and a Fourteenth Amendment claim against O'Reilly in his individual capacity for failure to supervise and train Medlock, McVea, and Cunningham, which he claims aused the sexual assault. No specific factual allegations against Livingston are set out in the complaint.

*Analysis*

*Standard of Review*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusory allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754–55 (5th Cir. 2000). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

*Claims for Sexual Assault*

Although plaintiff presented conflicting versions of the alleged sexual assault throughout the OIG investigation, both his complaint and his responses to the motions for

summary judgment are consistent in that plaintiff claims the movants exposed their penises to him and Medlock orally penetrated him. Although his complaint further asserts anal penetration, plaintiff disavows that occurrence in his responses to the motions for summary judgment, and claims instead that the movants "rub[bed] on [his] buttocks." (Docket Entry No. 69.)

In their separate but analogous motions for summary judgment (Docket Entries No. 59, 76), defendants Medlock and McVea contend that summary judgment is appropriate under *Scott v. Harris*, 550 U.S. 372 (2007), because the medical records and DNA test results so blatantly contradict plaintiff's story of sexual assault, that no reasonable jury could believe him and find in his favor. Defendants claim entitlement to qualified immunity based on the patent falseness of plaintiff's factual assertions.

In *Scott*, the Supreme Court determined that summary judgment was appropriate because the record in that case included a videotape of the underlying incident that so blatantly contradicted plaintiff's story that no reasonable jury could believe the plaintiff's story and no rational jury would be able to find in his favor. *Scott*, 550 U.S. at 380. While this Court understands movants' frustrations with the numerous and inexplicable contradictions between plaintiff's vacillating factual allegations and the physical forensic evidence itself, the instant case does not neatly fall within the parameters of *Scott*.

The medical examination assessments and observations undeniably contradict plaintiff's allegations of a "brutal" sexual assault. No oral, genital, or anal lesions or other evidence of sexual assault were found, and Aschberger was "unable to substantiate [a] sexual

11

act." However, the medical evidence does not completely rule out plaintiff's claims of an oral sexual assault or of being "rubbed" on his buttocks. Aschberger's inability to substantiate sexual assault does not establish movants' entitlement to summary judgment as a matter of law, nor do the medical records carry the weight and decisiveness of the videotape of the actual incident in *Scott*.

Further, the forensic DNA test results may not affirmatively link movants to the alleged sexual assault, but neither do they exonerate them. The tests results do not necessarily rule out plaintiff's claim that he was orally penetrated, and are inapplicable to his claim of being "rubbed" on the buttocks. Thus. the DNA forensic evidence does not establish movants' entitlement to summary judgment as a matter of law under *Scott*.

The summary judgment evidence in this case does not permit application of *Scott* to dismiss plaintiff's claims of sexual assault. Consequently, defendants are not entitled to summary judgment as a matter of law on plaintiff's sexual assault claims.

*Claims for Use of Excessive Force*

Defendants Medlock and McVea further contend that summary judgment is appropriate under *Scott* because the medical records so blatantly contradict plaintiff's story of a brutal physical assault, that no reasonable jury could believe plaintiff and find in his favor. Defendants claim entitlement to qualified immunity based on the patent falseness of plaintiff's factual assertions.

This Court agrees that plaintiff's claim of being extensively and brutally beaten by movants is not supported by the medical records. The medical staff's examination of

plaintiff the morning after the assault revealed only minor indicia of a physical altercation. Aschberger noted at most only several areas of "suggested very minor bruising" and areas of redness on plaintiff's torso so "very superficial" that it resembled someone having scratched an itch.

However, existing Supreme Court and Fifth Circuit precedent does not end the analysis of an excessive force claim at the slightness of the injuries. While defendants are correct that the medical records do not support the *degree* of assault and injury claimed by plaintiff, plaintiff need only establish an injury commensurate with the unreasonableness of the force. *See Payne v. Parnell*, 246 F. App'x 884, 888–89 (5th Cir. 2007). Moreover, the Fifth Circuit has recognized that even a slight physical injury may be sufficient for Eighth Amendment purposes if the force used is "of a sort repugnant to the conscience of mankind." *Gomez v. Chandler*, 163 F.3d 921, 924 n. 4 (5th Cir. 1999). In the instant case, the absence of medical evidence to substantiate plaintiff's allegations of a brutal beating is not enough to justify the summary judgment dismissal of plaintiff's claims. The forced oral penetration of an inmate by a prison officer's sex organ or the forced sexual "rubbing" of an inmate's buttocks by a prison officer's sex organ would arguably constitute force of a sort repugnant to the conscience of mankind, in which injuries of a slight nature such as those reflected in plaintiff's medical records would suffice to support the claim.

The summary judgment evidence in this case does not permit application of *Scott* to dismiss plaintiff's claims of physical assault. Consequently, defendants are not entitled to summary judgment as a matter of law on plaintiff's claims for use of excessive force.

*Claims for Racial Discrimination*

Plaintiff alleges in his complaint that movants intentionally discriminated against him because he is Hispanic, in violation of his constitutional rights under the equal protection clause of the Fourteenth Amendment. (Docket Entry No. 1, p. 8).

To establish a claim for racial discrimination under section 1983, a plaintiff must demonstrate that prison officials acted with a discriminatory purpose. "Discriminatory purpose" in an equal protection context implies that the prison official selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Here, plaintiff presents no probative summary judgment evidence demonstrating that the alleged actions of the movants were in any way motivated to have an adverse impact against an identifiable group, presumably Hispanic inmates. That plaintiff himself was Hispanic and that he claims movants used ethnic epithets during the alleged assault do not suffice to establish the required "discriminatory purpose."

Defendants' motions for summary judgment on plaintiff's claims for racial discrimination are GRANTED, and these claims are DISMISSED WITH PREJUDICE.

*Defendant Livingston*

Plaintiff sues defendant Livingston only in his official capacity. A review of plaintiff's complaint reveals the following allegations as to Livingston:

> Defendant Livingston is the executive director of TDCJ. As such, Livingston was the commanding officer of all TDCJ correctional officers, guards, and TDCJ employees and contractors, and was responsible for their training,

> supervision, and conduct. By law, he was responsible for ensuring that the custody, safekeeping, medical needs, and housing of all prisoners at the Huntsville Unit, including [plaintiff], were undertaken in compliance with the laws of the United States and Texas.

(Docket Entry No. 1, p. 3.) Plaintiff's complaint, however, sets forth no factual allegations giving rise to a claim against Livingston as to the incident made the basis of this lawsuit.

In his response to Livingston's earlier motion to dismiss, plaintiff attempted to clarify his claims against Livingston, and stated the following:

> Mr. Doe States a Claim Against Defendants O'Reilly and Livingston Because Defendants Deliberately and Indifferently Refused to Train, to Supervise, and to Discipline Corrections Officers, Causing Doe Serious Physical Injury.

(Docket Entry No. 14, p. 3, original capitalizations.) Plaintiff further asserted that, "O'Reilly failed to supervise his subordinate officers, which was deliberately indifferent to the inmates in the Huntsville Unit. O'Reilly's failure deprived Mr. Doe of his rights." *Id.*, p. 4.) Plaintiff again failed to allege a factual basis for his claim against *Livingston*. In urging the existence of an actual controversy between plaintiff and Livingston for purposes of contesting the motion to dismiss, plaintiff pleaded the following:

> Mr. Doe does not claim that Livingston personally sexually assaulted him. Rather, Mr. Doe challenges TDCJ's training and supervision of its corrections officers, which resulted in TDCJ corrections officers sexually assaulting him. Livingston, as the executive director of TDCJ, is empowered to improve policies and training regarding the supervision of guards and prevention of guard-on-prisoner sexual assault. Thus, Mr. Doe presents a live controversy.

*Id.*, p. 7. Thus, plaintiff's official capacity claim against Livingston is based on Livingston's failure to "improve policies and training regarding the supervision of guards and prevention of guard-on-prisoner sexual assault."

15

In his motion for summary judgment (Docket Entry No. 64), Livingston argues that plaintiff has repeatedly failed to articulate a factual basis for this claim against Livingston. Livingston asserts that, during discovery, he provided to plaintiff approximately 1000 pages of relevant rules and guidelines promulgated by TDCJ, as well as 400 pages of case-specific documents such as the incident report, OIG report, and plaintiff's medical records. *Id.*, pp. 3–4. Livingston argues that, despite this, "Plaintiff [has been] unable to identify any inadequacy that may have contributed to his alleged rape." *Id.*, p. 4. Livingston submits for the Court's review plaintiff's responses to defendant's interrogatories, wherein counsel for plaintiff stated that plaintiff "alleges and seeks to prove in this lawsuit that in fact TDCJ has a policy, practice and/or custom that allowed the correctional officers to beat plaintiff," and that "the alleged incident occurred due to improper training and lack of supervision on the part of [Livingston]." (Docket Entry No. 65, Exhibit B, pp. 4, 11.) Plaintiff further stated that he was unable to admit or deny whether Livingston was involved in the training or day-to-day supervision of the other defendants. *Id.*, pp. 9–10. Moreover, plaintiff was unable to point to any causative policy, practice, or custom regarding the incident, or to any deficiency in training, supervision, or policy implementation attributable to Livingston.

In neither of his two responses to the motions for summary judgment does plaintiff set forth facts regarding the acts, conduct, or deficiencies of Livingston giving rise to a civil rights claim:

> I need justice for what these officers did to me I want to take them to court for what they did to me my mind is not functioning like it used to I'm having a lot of mental problems sometimes I feel like my heart is going to stop beating due

16

> to what they did to me I got evidence leading to the fact that these people seirously [sic] injured me. I could die at any moment from what they did to me please I want justice I need trial.

(Docket Entry No. 68.) In his second response, plaintiff states the following:

> On the day and date at 10:15 a.m. 7-19-2007 I was asleep when three officers one sergeant and two officers opened the door and got in. When they got in they threw me to the ground and started beating me on my head and the rest of my body then they pulled off my pants and my underwear and started to rape me they pulled out their penis and wanted to put it in my rectum then the sergeant put it in my mouth then he moved the cheeks on my mouth and he ejaculated in my mouth he threw allot of semen the other officers wanted to insert their penis but I would move around so they wouldn't penetrate me all they did was rub on my buttocks but they were not able to penetrate me because I kept moving around they only penetrated me in my mouth but I spit it all out and I have a witness that saw what happened I need one trial and justice.

(Docket Entry No. 69.)

If a nonmovant fails to set forth specific facts that present a triable issue, his claims should not survive summary judgment. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001). As the Supreme Court has stated,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

To the extent that plaintiff's two responses may be construed as responses to Livingston's motion for summary judgment, they do not address the issues raised in Livingston's motion. To the extent the responses were not intended as responses to the motion, plaintiff has failed to oppose Livingston's motion for summary judgment. In either instance, plaintiff has failed "to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*.

Defendant Livingston is entitled to summary judgment as a matter of law. The motion for summary judgment is GRANTED and plaintiff's claims against Livingston are DISMISSED WITH PREJUDICE.

*Conclusion*

The Court ORDERS as follows:

(1)  Defendant Brad Livingston's motion for summary judgment (Docket Entry No. 64) is GRANTED, and plaintiff's claims against Livingston are DISMISSED WITH PREJUDICE.

(2)  Defendant Patrick Medlock's motion for summary judgment (Docket Entry No. 59) is GRANTED as to plaintiff's claims for racial discrimination and DENIED as to plaintiff's claims for sexual assault and excessive force.

(3)  Defendant Robert McVea's motion for summary judgment (Docket Entry No. 76) is GRANTED as to plaintiff's claims for racial discrimination and DENIED as to plaintiff's claims for sexual assault and excessive force.

(4)  Plaintiff's claims for racial discrimination are DISMISSED WITH PREJUDICE.

(5)  The Court will enter a separate revised scheduling order setting this case for trial.

THIS IS AN INTERLOCUTORY ORDER.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on October 4, 2011.

_____
Gray H. Miller
United States District Judge